UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


TIMOTHY B. SIMMONS,

        Petitioner,

v.                                                 Case No.  8:08-cv-2433-T-17EAJ

SECRETARY, DEPARTMENT OF CORRECTIONS,

        Respondent.

_____

## ORDER

    Before this Court is a timely-filed second amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by TIMOTHY B. SIMMONS (Petitioner), a Florida prisoner. The petition attacks Petitioner's conviction for Lewd or Lascivious Battery on a Person 12-15 Years of Age rendered in the Tenth Judicial Circuit in Polk County, Florida, in state circuit case number CF03-02213-XX.  A review of the record demonstrates that, for the following reasons, the petition must be **denied.**.

STANDARDS OF REVIEW

    Simmons's petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Woodford v. Garceau*, 538 U.S. 202 (2003); *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). AEDPA affects this Court's

review of both factual findings and legal rulings entered by the state courts in the rejection of Simmons's federal claims.

Pursuant to 28 U.S.C. § 2254(e)(1), this Court's review of state court factual findings must be highly deferential; such findings are presumed correct, unless rebutted by a petitioner with clear and convincing evidence. *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002); *Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002). Similarly, the legal rulings of claims adjudicated in state courts only provide a basis for federal relief where the state court adjudication was either "contrary to" clearly established federal law as determined by the United States Supreme Court, or involved an "unreasonable application" of such law. See 28 U.S.C. § 2254(d)(1); *Haliburton v. Secretary, Dept. of Corrections*, 342 F.3d 1233, 1238 (11th Cir. 2003).

In [*Terry*] *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed these standards at length. The Court explained that a state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. The question is whether the state court correctly identified the proper rule of law to be applied. *Robinson*, 300 F.3d at 1344-45; *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court decision is not "contrary to" established federal law even if a federal court might have reached a different result relying on the same law. *Williams*, 529 U.S. at 405-06; *Robinson*, 300 F.3d at 1344-45.

A state court ruling is an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law, but unreasonably applies that rule to the facts of the petitioner's case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. A federal court does not independently review the correctness of the state court adjudication; the "unreasonable application" analysis requires a showing that the state court ruling is not simply incorrect or erroneous, but objectively unreasonable. *Williams*, 529 U.S. at 409-410; *Robinson*, 300 F.3d at 1345; *Putman*, 268 F.3d at 1241. The measuring stick for both the "contrary to" and "unreasonable application" assessments of the state court merits adjudication is "clearly established federal law," which refers only to the holdings, and not dicta, of the United States Supreme Court at the time of the relevant state law decisions. *Williams*, 529 U.S. at 412; *Putman,* 268 F.3d at 1241.

In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Supreme Court set forth the standard for relief where error is determined, on habeas review, to exist. This test is "less onerous" than the harmless error standard enunciated in *Chapman v. California*, 386 U.S. 18 (1967). "The test is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.' Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' " *Brecht*, 507 U.S. at 637. Although no constitutional error has occurred in

this case, any possible error would clearly be harmless beyond any reasonable doubt based on the facts and the record herein.

AEDPA requires greater deference to state court decisions than the traditional de novo standard of review; Simmons has the burden to overcome the presumption of correctness attached to state court factual findings or to establish that the state court legal rulings were contrary to, or unreasonable applications of, established federal law. *Crawford,* 311 F.3d at 1295.

## STANDARD FOR PROCEDURAL DEFAULT/PROCEDURAL BAR

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell,* 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Snowden v. Singletary*, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

Exhaustion of state court remedies generally requires a petitioner to pursue discretionary appellate review. "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003)(citing *O'Sullivan*, 526 U.S. at 845). This is required even if the state Supreme Court rarely grants such petitions and usually answers only questions of broad significance. *O'Sullivan*, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones,* 256 F.3d 1135, 1138 (11th Cir. 2001). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d at 1138. "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson v. Campbell*, 353 F.3d at 891(quoting *Judd v. Haley*, 250 F.3d at 1313).

As stated above, a procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly

in the state court. *Henderson v. Campbell*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "'prejudice," Simmons must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis,* 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady,* 456 U.S. 152, 170 (1982). Simmons must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell,* 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); , 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson v. Campbell*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001) (citing *Calderon v. Thompson,* 523 U.S. 538, 559 (1998)); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, " '[t]o be

credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The *Schlup* Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. *Schlup* 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

"[t]he Supreme Court fairly recently made clear that an ineffective assistance of counsel claim being used for cause to excuse a procedural default of another claim is not itself excepted from the doctrine of procedural default." *Henderson v. Campbell*, 353 F.3d at 896. In *Edwards v. Carpenter*, 529 U.S. 446, 451- 52 (2000), a habeas petitioner argued ineffective assistance of counsel as cause for his procedural default of other constitutional claims in his § 2254 petition. But, he had never raised this ineffective assistance claim in state court, and he was now procedurally barred from raising the claim. The Supreme Court held that unless the petitioner could establish cause and prejudice to excuse his procedural default of his ineffective assistance

claim, he was barred from using it as a basis for cause to excuse his procedural default of the underlying claim. *Id.* at 451-53.

## STATE LAW CLAIMS

Generally, a claim alleging a violation of state law is not subject to review by a petition for the writ of habeas corpus. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *McCullough v. Singletary*, 967 F.2d 530, 535-36 (11th Cir.1992). To the extent raised in a federal habeas petition, a federal question is not exhausted in state court if raised in state court only as a state law claim. *Anderson v. Harless*, 459 U.S. 4, 6-8 (1982). A federal claim not "fairly presented" to a state court is procedurally defaulted for federal habeas purposes. *Baldwin v. Reese*, 541 U.S. 27 (2004).

## INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

## DISCUSSION

Given that Simmons has not challenged Respondent's statement of the procedural history of this case, a recitation of the procedural history of Simmons's criminal conviction is unnecessary. The issues are fully briefed and the case is ripe for

decision. The record is fully developed and the claims of the petition raise issues of law, not issues of fact. *See Breedlove v. Moore*, 279 F.23 952, 959 (11th Cir. 2002).

Because of the deference due the state court's findings of fact and conclusions of law, the state courts' determination of Simmons's claims largely governs review of those same claims. Consequently, in considering the reasonableness of the state courts' determinations, the review of Simmons's claims includes a recitation of the pertinent state court analysis.

GROUND ONE

Simmons contends he was denied due process of law when the trial court improperly allowed the State to present inadmissible DNA evidence and testimony at Simmons's trial. Specifically, Simmons complains the State failed to establish chain of custody of the DNA evidence, and also that the DNA tests performed were not reliable, making the evidence inadmissible. This ground must be denied.

The arguments concerning the chain of custody and the reliability of the DNA testing procedures are procedurally barred because Simmons failed to object to the admission of DNA evidence at trial to preserve the issues for appellate review. These issues were raised in Simmons's pro se brief on direct appeal, and the State asserted a procedural bar due to Simmons's failure to object. Claims that are procedurally defaulted in state court are not reviewable by this Court unless Simmons can demonstrate cause for the default and actual prejudice, *Wainwright v. Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), or establish the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the

conviction of a defendant who was "actually innocent" contemplated in *Murray v. Carrier*, 477 U.S. at 496, 106 S. Ct. 2639. Cause must ordinarily be something external to the defense. *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995), and allegations of cause are subject to default. *See Edwards v. Carpenter*, 529 U.S. 446 at 453, 120 S.Ct. 1587 (ineffective assistance of counsel claim asserted as cause for procedural default of another federal claim could itself be procedurally defaulted). Simmons did not show valid cause in the state courts to excuse his default.

Even if, arguendo, he could show valid cause, Simmons cannot avoid his default. He does not allege and meet the prejudice component of the *Wainwright v. Sykes* test. Moreover, Simmons does not qualify for the fundamental miscarriage of justice exception, because he has no new and reliable evidence of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 321-22, 130 L. Ed. 2d 808, 115 S. Ct. 851 (1995). Second, Simmons failed to properly exhaust the constitutional dimension of his claim by presenting to the trial court an argument that the admission of DNA evidence violated his federal constitutional or statutory rights. Consequently, the constitutional claim he raises in the federal petition is procedurally barred. A Section 2254 application cannot be granted unless a Simmons "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). *See also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir.

2003)("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995)("Exhaustion of state remedies requires that the state prisoner fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights"). *See also, Baldwin v. Reese*, 541 U.S. 27, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004), where the Supreme Court pointed out that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal." *Id.,* 541 U.S. at 32, 124 S.Ct. at 1351.

Third, even if properly preserved, the issue raise in Ground One concerns a matter of state law that does not rise to the level of constitutional magnitude and is therefore not cognizable in this federal proceeding. In *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991), the Supreme Court was confronted with a ruling under California law that allowed prosecutors to introduce evidence of prior injuries to a child to prove "battered child syndrome" in the context of a murder trial. The Supreme Court stated that "such an inquiry" into the application of state evidence law is no part of a federal court's habeas review of a state conviction. Federal habeas corpus relief does not lie for errors of state law; it is not the province

of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *McGuire,* 502 U.S. at 67-68. (citations and internal quotation marks omitted). Although a federal court reviewing a state prisoner's habeas petition may not reexamine state-court determinations on state-law questions, it may review state evidentiary rulings to determine whether the rulings violated Simmons's due process rights. *Felker v. Turpin,* 83 F.3d 1303, 1311-12 (11th Cir. 1996). In such instances, the inquiry is limited to determining whether evidentiary errors "'so infused the trial with unfairness as to deny due process of law.'" *Id.* (quoting *Lisenba v. California,* 314 U.S. 219, 228, 62 S. Ct. 280, 286, 86 L. Ed. 166 (1941)). The determination of whether an evidentiary error is of such magnitude as to deny fundamental fairness is to be made in light of the evidence as a whole. *Id.* at 1312. To succeed on his due process claim, Simmons must do much more than simply show that the DNA evidence was inadmissible under state law. The Supreme Court has long made clear that the federal courts are not to "treat a mere error of state law, if one occurred, as a denial of due process." *Gryger v. Burke,* 334 U.S. 728, 731, 92 L. Ed. 1683, 68 S. Ct. 1256 (1948). Simmons has not done so in the instant case. There was no denial of due process in Simmons's case because the DNA evidence was reliable, relevant, and admissible and Simmons's claims to the contrary are without merit. See the factual assertions and legal argument set out in the State's answer brief:

> The appellant, pro se, seeks review of his conviction for lewd or lascivious battery. He argues the erroneous admission of DNA evidence

at his trial violated his rights to due process of law, equal protection of the law, and the right to a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. The state responds the appellant's claims in respect to the PCR/STR DNA testing are procedurally barred and without merit. [Fn 2]

> [fn 2] A trial court has broad discretion in determining the range of subjects on which an expert witness can testify, and, absent a clear showing of error, the court's ruling on such matters will be upheld. *Pagan v. State*, 830 So. 2d 792, 815 (Fla. 2002). Where a scientific principle has been established and generally accepted in the relevant scientific community, and has also been[1] tested in the legal community, it is no longer "new or novel" and there is no need to reapply a *Frye* analysis. *Williams v. State*, 710 So. 2d 24, 30-31 (Fla. 3d DCA 1998). Since *Frye* is inapplicable, the admissibility of the expert testimony was a matter within the broad discretion of the trial court and is not reversible absent a showing of abuse. *Williams,* 710 So. 2d at 32 n. 13. Of course, if no issues are preserved, there is no standard of review.

The appellant first argues that the state failed to establish a chain of custody for the rape kit. This issue is not preserved for review. To preserve an issue about evidence for appellate review, an appropriate objection must be made at the time the evidence is offered. See, e.g., *Terry v. State*, 668 So. 2d 954, 959 (Fla. 1996). The record reflects state's exhibits 2, 3, and 4 were admitted without objection. (R. vol. II at 225) Relevant physical evidence is admissible unless there is an indication of probable tampering. *Peek v. State*, 395 So. 2d 492, 495 (Fla. 1980). There was no allegation of tampering at trial.

Even if preserved, the argument is without merit. Registered Nurse Practitioner Connie Fleming testified she sealed and initialed the rape kit [footnote omitted] and gave it to the detective. (R. vol. II at 162) Detective Page testified she was on the premises, but not in the exam room itself. (Id. at 175) She made contact with Ms. Fleming after the exam. Detective Page took the sexual assault kit from Ms. Fleming. Detective Page had watched her package it. (Id.) At trial she identified

---

[1] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923) (scientific principles or methodologies to which an expert testifies must be generally accepted in the scientific community before they will be considered valid in the courts).

the rape kit because it had her tape and her initials on it, and it also had where she had signed off the evidence which had been collected from Ms. Fleming and submitted to property. (Id. at 176) The package appeared to have gone to the crime lab, but it was the same rape kit. The additional seals indicated the kit had been sent to FDLE for testing. (Id. at 177).

Ms. Janelle-Borries, FDLE Laboratory Analyst, testified she recognized state's exhibit 2, the rape kit, by the unique FDLE case number, the exhibit numbers, her own initials, and the date. (Id. at 220) When she finished her analysis of each exhibit, she repackaged them, returned them to the evidence section, which returned them to the originating agency. (Id. at 225) It was stipulated that Detective Carpenter would have testified that he took oral swabs from the appellant and the victim and submitted them to FDLE. (Id. at 196)

The appellant next argues that Ms. Janelle-Borrie's testimony that the DNA profile obtained from the vaginal and perineum swabs "matched" his DNA at all thirteen loci was improper. Janelle-Borries testified that the frequency of an unrelated individual having the same DNA profile was 1 in 1.5 quintillion Caucasians, 1 in 24 quadrillion African-Americans, and 1 in 3.3 quintillion southwestern hispanics. (R. vol. II at 222) There was no objection to this testimony and it is procedurally barred. *Kokal v. State*, 901 So. 2d 766, 778 (Fla. 2005), cert. denied, ___ U.S. ___, 126 S. Ct. 560, 163 L. Ed. 2d 471 (2005).

The testimony was not improper since the second step of DNA analysis uses statistics to estimate the frequency of the DNA pro-file in the population. *Butler v. State*, 842 So. 2d 817, 827 (Fla. 2003). The quantitative estimate of a random match helped the jury and the trial court understand the importance of the DNA match. *Id.* The appellant further argues that Ms. Janelle-Borries testified to the composition of the FBI database of which she had no personal knowledge. Again, the record reveals no objection whatsoever to any alleged deficiency in the expert's knowledge of the database. There was no request to voir dire the witness regarding her knowledge of the FBI database. The issue is defaulted. (R. vol. II at 215, 216)

In any case, personal knowledge of the database is not a pre-requisite to expert testimony. A sufficient knowledge of the authorities pertinent to the database is an adequate basis on which to render an opinion. *Butler*, 842 So. 2d at 828. *See also Hudson v. State*, 844 So. 2d 762, 763 (Fla. 5th DCA 2003) (test is not whether expert is a mathematician or statistician). Here, Janel-Borries stated that FDLE did

not itself validate the FBI database; the database was validated by a peer review process. She further explained the three criteria for a database to be valid. (R. vol. II at 216) Defense counsel did not conduct a voir dire to explore possible deficiencies in Janel-Borrie's knowledge of the FBI data-base. (Id. at 217) The appellant further argues that Ms. Janel-Borries ran into a "multitude" of complications performing his DNA analysis, and, therefore, the DNA test results were not reliable enough to pass the Frye test. The appellant refers to defense counsel's crossexamination of Ms. Janel-Borrie's methodologies in performing the PCR/STR DNA analysis. For example, Janel-Borries had to reset the victim's buccal swab sample for reinjection on the instrument. (R. vol. III at 231) Another problem was that on September 12, 2003 the D-7 locus was inconclusive. However, on September 15, 2003 the D-7 was obtained. (Id. at 235) There was another problem of a "spike" in doing the buccal of the appellant. Janel-Borries had to reamplify the sample, i.e., do the test again, but from farther back. (Id. at 237, 238)

It is evident that from the technical nature of defense counsel's cross-examination, he was attempting to discredit any jury impression that the state's PCR/STR DNA evidence might be infallible. However, as recognized in *United States v. Bonds*, 12 F. 3d 540, 561 (6th Cir. 1993) "[d]isputes about specific techniques used or the accuracy of the results go to the weight, not to the admissibility of the scientific evidence." *See also State v. Copeland,* 922 P. 2d 1304, 1320 (Wash. 1996) (laboratory error a matter of weight, not admissibility under Frye). PCR/DNA testing is generally accepted by the scientific community and is not subject to *Frye* testing. *Zack v. State*, 911 So. 2d 1190, 1198 n. 3 (Fla. 2005).

Exhibit 2: Answer Brief of Appellee at pages 5-9.

On November 15, 2006, in case no. 2DO5-1561, the Second District Court of Appeal filed a per curiam affirmance of Simmons's convictions and sentences. (Exhibit 4). *Siimmons v. State*, 944 So. 2d 365 (Fla. 2d DCA 2006) (table). Simmons has not shown that the state courts acted contrary to, or unreasonably applied any established federal law in denying his claim in ground one and ground one does not warrant habeas corpus relief.

## GROUND TWO

Simmons alleges he was denied due process of law when the prosecution knowingly concealed exculpatory testimony of its expert and knowingly allowed false or perjured testimony of the State's expert at trial. As a factual basis, Simmons states that

> the prosecutor knowingly coached an expert witness; one Ms. Fleming a medical examiner to falsely testify that the victim had new injuries (tissue trauma, redness, and swelling) attributed to a recent sexual assault. When her written report and deposition testimony established that the victim had not been recently sexually assaulted. The written report revealed that "there are physical findings diagnostic of penetration and consistent with a history of sexual abuse. The physical findings are "older", and time of injury cannot be determined."

> Therefore, when the prosecution violated discovery by not forewarning the defense that Ms. Fleming had changed her testimony, resulted in depriving Simmons of his defense as set forth in her written report. Thus, Simmons was deprived of a fair and impartial trial when the prosecutor withheld this information . . .

(See § 2254 petition at page 6). The state postconviction court treated this claim as an alleged violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and denied the claim for lack of merit. The court properly held that *Brady* did not apply because the evidence Simmons alleged was withheld by the State was inculpatory rather than exculpatory. The court's order denying relief states in pertinent part:

> In claim one, the Defendant alleges that the State committed a *Brady* violation by failing to inform trial counsel of a change in Connie Fleming's testimony, a change that the Defendant alleges was inculpatory to the Defense. For evidence to qualify as material under Brady, the evidence suppressed by the State must be favorable to the defense. Further, the Court must find that the suppression "violates due process where the evidence is material either to guilt or to punishment,

-16-

irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The "evidence is material...'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Lightborne v. State*, 644 So. 2d 54, 58 (Fla. 1994) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

The evidence that the Defendant alleges is material under *Brady* clearly does not meet this standard. First, even the Defendant admits that the evidence is inculpatory to his case, thus the evidence would fall outside of *Brady*, as it only is concerned with exculpatory evidence. Second, even if the evidence did qualify under *Brady*, there is not a reasonable probably that it would have resulted in a different verdict. The fact remains that the DNA evidence established that the Defendant's sperm was found inside the victim. Third, the Defendant admits that Defense counsel deposed the witness and cross-examined her during trial. Therefore, the State did not commit a *Brady* violation and claim one is **DENIED**.

(Exhibit 7 at pages 2-3).

A review of the record reveals, however, that no evidence was withheld from the defense. In a letter written to The Florida Bar dated July 21, 2005, Simmons's trial counsel, Ronald N. Toward, responded to Simmons's complaint where Simmons made the same allegation as that raised in ground two of the instant federal petition. (See Exhibit 6: Motion for Postconviction Relief: Simmons's Exhibit I attached to the motion). Mr. Toward explained in pertinent part as follows:

First, regarding the testimony of ARNP[2] Connie Fleming, she noted in her report and testified at trial that the victim exhibited signs of both old and acute sexual abuse. Obviously, it was the "acute" sexual abuse with which we were concerned because the examination of the victim was conducted within approximately five (5) hours of the alleged assault. The nurse confirmed that the victim had no other types of injuries other than those associated with the genitalia.

---

[2] Advanced Registered Nurse Practitioner.

Mister Simmons alleges in his letter that I knowingly permitted the medical examiner to testify to false and/or misleading evidence. He further alleges that I made no attempt to properly impeach the medical examiner through the use of her deposition because I failed to have her deposition transcribed. Ms. Fleming testified at trial exactly as she testified during her deposition. She freely acknowledged that her examination of the victim failed to reveal any signs of a struggle, including bruises to the face, arms, neck shoulders, or lower extremities.

(Exhibit 6, Motion for Postconviction Relief: Simmons's Exhibit I at page 2).

Trial counsel's statements regarding Connie Fleming's trial testimony are borne out by the record. At trial, Nurse Fleming described her physical findings resulting from the examination of the victim as follows:

NURSE FLEMING: [The victim] had several areas of redness and swelling consistent with tissue trauma, and that is consistent with her history of recent sexual assault. In addition to that, she had several areas that -- pardon me -- that fluoresced under the Wood's lamp, which was consistent with semen. So we took a swab of those areas to be sent to the crime lab. And in addition to that, she also had some evidence of past sexual activity, abuse, if you will.

PROSECUTOR: Okay. And the redness that was detected, did you draw any conclusions based on that?

NURSE FLEMING: Well, that's consistent with tissue trauma, as I said. It was red and swollen, consistent with her history of sexual assault earlier that evening.

(Exhibit 14: Vol. 2: T 160-161).

Although it appears Nurse Fleming's deposition testimony was never transcribed, the record shows her trial testimony was consistent with her written report, as stated by trial counsel in his letter to the Florida Bar. The written report, which appears in the record as Simmons's Exhibit A attached to his motion for postconviction relief, provides the following conclusions supported by the examination of the victim:

> There are physical findings diagnostic of penetration and consistent with a history of sexual abuse. The physical findings are older, and time of injury cannot be determined. <u>In addition, there are physical findings consistent with the history of acute sexual abuse/assault.</u> On examination, there were areas which fluoresced under Woods light. This is consistent with semen. Specimens have been collected for the FDLE lab.

(Exhibit 6: Motion for Postconviction Relief, Simmons's Exhibit A. (emphasis added)).

Consequently, the record conclusively shows there was no evidence, exculpatory or inculpatory, that was not provided to the defense. The State witness's testimony at trial was consistent with her deposition testimony and written report regarding her physical findings of sexual abuse. During closing argument, defense counsel made use of the fact that the victim's genitalia showed little sign of a sexual attack, and there was no evidence of bruising or trauma to other areas of her body. (Exhibit 14: Vol. 3: T 303-304).

Alternatively, even if Nurse Fleming's trial testimony could be considered different from her deposition testimony or written report, the state court's decision as to ground two is objectively reasonable. In *Strickler v. Greene*, 527 U.S. 263, 119 S.Ct. 1936 (1999), the United States Supreme Court summarized the standard for analyzing a claim that the prosecutor withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963):

> In *Brady*, this Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S., at 87, 83 S.Ct. 1194. We have since held that the duty to disclose such evidence is applicable even though there has been no request by the accused, *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.,* at 682, 105 S.Ct. 3375; *see also Kyles v. Whitley*, 514 U.S. 419, 433-434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

*Strickler*, 119 S.Ct. at 1948. In this case, the court correctly concluded the alleged change in Connie Fleming's testimony constituted inculpatory, rather than exculpatory, evidence.

Under certain circumstances the late disclosure even of inculpatory evidence could render a trial so fundamentally unfair as to violate due process. *See Machin v. Wainwright*, 758 F.2d 1431 (11th Cir. 1985). However, in this case, there was no evidence withheld from Simmons prior to trial. Even if it had been, however, in light of the victim's testimony and evidence of Simmons's sperm in the victim's vaginal canal and on her cervix a few hours after the sexual attack, the result of the proceeding would not have been different had the evidence been available to Simmons earlier. Thus, the state court's ruling was neither contrary to, nor an unreasonable application of Supreme Court precedent, and ground two does not warrant habeas corpus relief.

GROUND THREE

Simmons contends trial counsel was ineffective for failing to suppress or object to the evidence of DNA test results of Simmons's saliva sample which was obtained

by the prosecutor's motion to compel Simmons to submit to saliva samples for the purpose of DNA comparison analysis. It appears Simmons is arguing that his constitutional rights were violated when he was compelled to submit to the saliva sample, and that the chain of custody was not established for the DNA evidence taken from Simmons or the victim. These two separate allegations were raised in grounds two and three of the motion for postconviction relief. They were reasonably denied by the state court because any objection made by trial counsel regarding the taking of the saliva sample would have been meritless and cannot be the subject of an ineffective assistance of counsel claim. Similarly, since it was established the State laid a proper foundation for the chain of custody, and that the rape kit and DNA samples were properly admitted into evidence, any objection raised by trial counsel would have been meritless. Consequently, Simmons did not prove his trial attorney's performance was deficient as to either claim. The postconviction court's order as to these two claims reads:

> In claim two, the Defendant alleges ineffective assistance of counsel based on Defense counsel's failure to file a Motion to Suppress based on the illegal seizure of the Defendant's DNA sample. A review of the Court file reveals that the State filed a *Motion to Compel Defendant to Submit Saliva* on April 29, 2003. At this time the State sent a copy of the Motion to trial counsel and also set a Hearing on the Motion to occur on May 2, 2003. The Court file reflects that a copy of the Notice of Hearing was sent by fax to trial counsel. This hearing took place on May 2, 2003, where the State and trial counsel were present. At this hearing, the Court granted the Motion and ordered the Defendant to submit saliva for DNA testing.

> Under Rule 3.220(c)(1)(G), Fla. R. Crim. P., after the filing of an information, the court may require a defendant to "permit the taking of samples of the defendant's blood, hair, and other materials of the defendant's body that involves no unreasonable intrusion". Fla.R.Crim.

P. 3.220(c)(1)(G). The information in this case was filed on April 17, 2003, therefore, the Court had the ability to require the Defendant to provide a saliva sample without needing a search warrant. As a saliva sample would be less intrusive than a blood sample, the Court properly ruled that there was not an unreasonable intrusion. Therefore, any objection made by the trial counsel would have been meritless and cannot be the subject of an ineffective assistance of counsel claim. *Teffteller v. Dugger*, 734 So. 2d 1009, 1023 (Fla. 1999). Accordingly, claim two is **DENIED**.

In claim three, the Defendant alleges ineffective assistance of counsel based on Defense counsel's failure to object to the introduction of the DNA sample into evidence because the State did not properly establish chain of custody. The Defendant relies on paperwork produced during discovery and not on the testimony presented at trial. An examination of the trial testimony demonstrates that a chain of custody was established for the victim's DNA samples located within the rape kit, the Defendant's buccal samples, and the victim's buccal samples. Specifically, the nurse who took the victim's rape kit, Connie Fleming, testified that she handed the kit to the detective who was at the hospital. Trial Transcript at p. 160-62. Detective Page testified that she was at the hospital and she received the rape kit from Ms. Fleming and submitted it to the Florida Department of Law Enforcement. Id. at p. 175-77. Further, Detective Page was able to identify the rape kit introduced into evidence as the one that she received from Ms. Fleming based on the tape she used to seal the package and her handwriting found in the form of her initials and date. Id. Further, the Defense and State stipulated to testimony from Detective Ron Carpenter, that he was the person who took the oral swabs from the Defendant and the victim and that he was the person who submitted those swabs to Florida Department of Law Enforcement. Id. at 196. Finally, Janelle Borries testified that these samples and the rape kit introduced into evidence, were the same ones that she performed the DNA analysis on based on her handwriting being found on the package. This handwriting is in the form of her initials and date and pertinent FDLE information. Id. at 218-220. This all establishes that the State laid a proper foundation for the chain of custody, and that the rape kit and DNA samples were properly admitted into evidence. As any objection raised by Defense counsel would have been meritless, there is no showing of prejudice to establish ineffective assistance of counsel. *Teffteller v. Dugger*, 734 So. 2d 1009, 1023 (Fla 1999). Accordingly, claim three is **DENIED**.

(Exhibit 18 at pages 6-7).

Simmons's reply to ground three (Doc. 27) is not persuasive, and ground three does not warrant habeas corpus relief.

GROUND FOUR

Simmons alleges that trial counsel was ineffective for failing to interview, depose, and call witnesses, and adequately investigate and prepare for trial. In his federal petition, Simmons specifically refers to counsel's failure to interview, depose, and/or call as witnesses Laquista Franklin, the mother of the victim, case coordinator Amy Wilkins, Detective Linda Cruz Page, Janelle Borries, and Marcus Brown.

Ground Four seems to encompass grounds six, seven, eight, twelve, and thirteen of the Rule 3.850 motion for postconviction relief. The state court adopted the State's response as to those five claims:

2. The Defendant's sixth claim of error

    In his sixth claim of error, the Defendant takes the position that Laquista Franklin, the victim's mother, and Amy Wilkins, an advocate from the Child Protection Team, should have been called for impeachment purposes as to Advanced Registered Nurse Practitioner Connie Fleming. See Defendant's Motion at 31, 37-38. He claims that Wilkins and Franklin saw the victim remove her underwear during Fleming's examination. See Id. He thinks that this would shed light on "a major discrepancy" concerning the victim's panties. See Id. at 31. He also takes the position that Franklin was present during the examination, not merely on the premises, as Franklin testified. See Id.

    This case devolves from the violent rape of a fourteen year old girl by the Defendant in her home. See Id. at 99, 103-11. The Defendant's DNA was identified in samples taken from the Defendant. See Id. at 218, 221-23. The Defendant believes that the victim's panties had been collected from the floor of the bathroom where the sexual battery occurred. See Defendant's Motion at 38. He attributes this testimony to Polk County Sheriff's detective Linda Page. See Id. Det. Page testified that she "believed" the panties to have been recovered from the bathroom floor. See Id.; see also Trial Transcript at 192, line 12. But Det.

Page's was unsure of that location she referred to her report, and corrected herself on the stand seconds later. See Trial Transcript at 192, lines 20-22. Det. Page's trial testimony is that she collected the panties at the Child Protection Team after the examination, not from the floor of the bathroom. See Trial Transcript at 192, lines 20-22. this is identical to the Defendant's rendition of Fleming's testimony. See Defendant's Motion at 38-39. The Record refutes the Defendant's claim of a "discrepancy" regarding recovery of the panties.

This leaves us only with the question of Laquista Franklin's presence in the examination room. This is of minimal at best impeachment value; it is inconceivable that an objective jury would regard the presence of a fourteen year old victim's mother in the examination room during an intrusive physical examination as problematic, even if it did happen, and Fleming's testimony is otherwise. Furthermore, it is not disputed that Franklin was at the Child Protection Team during the examination of her daughter. The Defendant has not alleged that Franklin interfered in any way with the examination, or even participated in it. He bears the burden to show that this minimal impeachment would have resulted in his acquittal, *see Strickland*, 466 U.S. at 687-89, and that he has not done. On this point, the Defendant's sixth claim lacks legal sufficiency to proceed to an evidentiary hearing.

### 3. The Defendant's seventh claim of error

The seventh claim of error concerns Trial Counsel's not interviewing or deposing Florida Department of Law Enforcement Analyst Norma Janelle Borries, who performed the DNA analysis in this case. See Defendant's Motion at 42. The Defendant claims that Trial Counsel "had no idea what Ms. Borries would testify to," rendering his trial preparation flawed. The Record refutes the claim of lack of preparation, because it affirmatively shows that Trial counsel was well prepared for the cross-examination of Analyst Borries. The Defendant has not shown that deposing her beforehand would have altered the outcome of this proceeding, and his claim is therefore legally insufficient for hearing.

Trial Counsel's cross-examination covers 23 pages of the Trial Transcript. See Trial Transcript at 226-49. He quizzed her regarding the number of loci she tested and showed that she tested only 13 of a potential 300. See Id. at 226. He discussed with her how DNA analysis is performed in detail, showing his intimate understanding of the concepts involved. See Id. at 227-29. He highlighted what an "artifact," something that should not be in a readout, is. See Id. at 229. He introduced multiple defense exhibits, including the original FDLE

electropherogram, the raw test results. See Id. at 230-242. He introduced eleven different documentary exhibits taken from the examination during his interrogation of Analyst Borries. See Id. at 249. Each one of them he went over with her in detail, highlighting problems that Analyst Borries had encountered in her work. See Id. at 231-49. And in his closing argument, he hammered home each of these problems with the analysis. See Id. at 296, 305-310. The Record refutes the Defendant's claim that Trial Counsel was unprepared for this cross examination, and he does not show how deposition of Analyst Borries would have changed the outcome, given his substantial knowledge of the examination and of the results. *See Strickland*, 466 U.S. at 687-89. The seventh claim of error should be denied without hearing.

4. The Defendant's eighth claim of error

The Defendant's eighth claim of error revolves around his position that Det. Page should have been deposed. See Defendant's Motion at 43. He claims that Det. Page "falsely testified that she watched Ms. Fleming package the sexual assault kit" because the discovery documents reflect a ten minute lapse between the conclusion of the victim's examination and Det. Page's contact with Fleming. See id. at 32, 43. He also claims that the chain of custody for the kit was false. See Id. at 43. Both of these claims lack legal sufficiency for a hearing.

Fleming testified that she passed the swabs to Det. Page immediately following the testing. See Trial Transcript at 162. This matches Det. Page's testimony as related by the Defendant. See Defendant's Motion at 43. The Defendant does not allege that the swabs were tampered with in the ten minute interval between their collection and the conclusion of the examination. See Id. Nor does he allege that the kit itself was ever tampered with. See id. Furthermore, nothing that the Defendant points to in the Trial Transcript indicates that Det. Page did not watch Fleming package the kit; rather, Fleming's testimony supports Page's.

The main problem that the Defendant is claiming here is that Trial Counsel did not challenge the chain of custody for the sexual assault kit. See Defendant's Motion at 42-44. But any such attempt would have failed, because the Defendant has not shown a probability, as opposed to a mere possibility, of tampering with the kit. *See State v. Taplis*, 684 So. 2d 214, 215 (Fla. 5 DCA 1996). The Defendant does not even allege tampering with the kit in his Motion. He has therefore failed to show that the result of this proceeding would have been different, had Trial Counsel made that allegation. Nor has he shown how uncovering this information

by deposing Det. Page would have impacted that outcome, particularly given that Trial Counsel depose Fleming, as the Defendant himself admits. See Defendant's Motion at Exh. I. The Defendant's eighth claim of error should be denied as refuted by the Record in the form of Fleming's testimony and as legally insufficient to require an evidentiary hearing, because the Defendant has not shown that the chain of custody defect-if it was in fact a defect would have altered the outcome.

5. The Defendant's 12th and 13th claims of error

In his twelfth and thirteenth claims, the Defendant takes the position that the victim's prior molestation by Marcus Brown, which was unconnected to the instant sexual battery by the Defendant, was admissible at trial, and the victim should have been questioned about it. See Defendant's Motion at 45. He contends that Brown should have been deposed, and called at trial. See id. at 46. His position is that the relevance of this material is impeachment of the victim. See id. at 45.

The Defendant claims that Brown molested the victim over two years, and that at trial the victim testified that she had had sex three times previously, three months prior to her rape by the Defendant. See Defendant's Motion at 46. The Trial Transcript does confirm the victim's testimony. See Trial Transcript, *State v. Simmons*, Case No. CFO3-002123-XX at 111 (Fla. 10 Cir. Ct. Jan. 3-4, 2005) (Trial Transcript). The State notes that this case devolves from the violent rape of a fourteen year old girl by the Defendant in her home. See Id. at 99, 103-11. The Defendant's DNA was identified in samples taken from the Defendant. See Id. at 218, 221-23. And when summarily considering his motion, the Defendant's claims regarding Marcus Brown must be taken as truthful to the extent that the Record does not refute them. See Id. The undersigned therefore assumes arguendo that Brown did repeatedly molest the victim over two years' time.

The Defendant bears the burden of establishing that the result at trial would have been different, had Trial Counsel hammered home to the Jury the fact that the victim was a prior victim of sexual abuse by another man. *See Strickland*, 466 U.S. at 687-89. Although this testimony would have been inconsistent with the victim's trial testimony as to the number of sexual contacts she had prior to the Defendant's rape of her, it defies common sense to believe that a reasonable jury would place that above the potential sympathy that a revelation of years of prior abuse of a young girl would have invoked in them, particularly given the fact that the Defendant's DNA was recovered from the victim's vaginal vault.

The Defendant prefers to concentrate his claims for relief in the 12th and 13th issues on items with minimal value to impeach a testifying witness. As the Florida Supreme Court has held, however, this does not render a reasonable attorney ineffective where it is clear that the outcome would be no different had the attorney used the minimal information. In *Garcia v State*, 949 So. 2d 980, 988-89 (Fla. 2006), a defendant made claims similar to those at issue here. There, a police report in a murder case was at issue, containing numerous inaccuracies, including referring to a critical witness by the wrong name. See id. In addition, the inaccuracies included an assertion that in a prior conversation with that defendant, the witness had heard an account of stabbing an old woman, and that the co-defendant had participated in the conversation *See Id.* At trial, the witness testified to the report was a lie, and that the defendant spoke of killing only women, and not men; and the co-defendant did not participate in the conversation. *See Id.* The high court's confidence in the verdict was not undermined, because the trial counsel had presented "more powerful" impeachment to the jury. *See Id.*

Here, Trial Counsel also elicited more powerful impeachment than traumatizing a victim with her prior abuse in front of the jury. Trial Counsel focused on the victim's account of the incident, and called attention to differences in that account and in her deposition testimony. See Trial Transcript at 130-133; 139-140. He emphasized this in his closing argument, and pointed out where the physical evidence did not match the trial testimony. See Id. at 298-305. As in *Garcia*, Trial Counsel's decision not to employ the victim's prior abuse against her may have prevented the jury from hearing a minor inconsistency, but it also prevented them from hearing things that might well have induced a verdict against him even faster than otherwise happened. The 12th and 13th claims of error should be denied, because the Record shows that the impeachment value of this subject is minimal in the face of the potential harm it could have done.

(Exhibit 8: State's Response to the Court's Order to Show Cause at pages 3-11).

For the reasons stated in the response, which was adopted by the postconviction court in its final order denying relief, the individual allegations of ineffective assistance trial counsel were reasonably denied for failure to satisfy both prongs of the *Strickland* test. The state court's rejection of Simmons's claims in the direct and postconviction appeals did not result in decisions that were contrary to, or

involved an unreasonable application of, clearly established Federal law; nor did they result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Thus, the state court's rulings are entitled to deference by this Court under the AEDPA.

Ground four does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Petitioner's petition is denied. The Clerk is directed to enter judgment against Petitioner and to close this case.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on April 6, 2010.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Timothy B. Simmons